Good morning, Your Honors. My name is Joseph Camden, Federal Defendant of San Diego, on behalf of Mr. Delgado-Benitez. May it please the Court, Mr. Delgado submitted a detailed declaration in this case in accordance with the local rules that, if believed, described due process violations resulting in prejudice that were sufficient to justify dismissal of the indictment. The District Court erred when it applied a legal standard that precluded consideration of that declaration. Your voice is dropping, and you'd be better off if we'd hear you, I think. I apologize, Your Honor. It's nervous. It's my first time here. It's no problem. You're just going to have to not rely on those mics to amplify, because they record, but they aren't amplified. Understood, Your Honor. In any case, when Mr. Delgado filed an affidavit in accordance with the local rules, the District Judge's order simply did not factor that declaration into his decision. The District Court did acknowledge its existence in a footnote in a section entitled Contention of the Parties. However, the government argued in the District Court that the Perez-Lestor case, which enumerates several factors from the cold transcript of the record that a court should examine when the defendant claims or the respondent claims a translation error, the court held that that case applied. In the order, the first paragraph simply is a block quote from Perez-Lestor citing those three factors. And then the court proceeds with a review simply of the transcript of the immigration court hearing. Now, Mr. Delgado in his declaration alleged several facts which occurred outside of the cold record of the proceedings. He alleges that the translation headset that was provided was insufficient. He said the sound was going in and out and there was an echo, and that interfered with his ability to be able to understand the judge. He also alleged that when the judge shouted at him and continued the proceedings, he felt afraid and he felt intimidated. I guess I should step back. But he answered the questions. There are answers on the record, Your Honor, but some of those answers make no sense. For example, the immigration judge asked him, do you have any children who are permanent residents or United States citizens? The answer on the record is no. Now, on the face of it, that is an answer that makes perfect sense. However, we submitted, in addition to the declaration, a copy of the birth certificate of his son, which lists Mr. Delgado Benitez as the father, and his son had been born just several months before in Escondido, California. So there are facts outside of the cold transcript of the record that contradict, that certainly corroborate his claim that he couldn't quite understand. He couldn't understand the questions and he wasn't able to fully participate in the proceedings. That particular question is a compound question and it's possible that he didn't know the right answer and he answered, but the whole set of questions that were put to him, which he answered, indicated that the defendant knew what was up and answered. Well, on the face of it, Your Honor, on the transcript... Are you a Mexican citizen? Yes. On the face of it... Are you a U.S. citizen? No. On the face of it, yes, the answers are responsive. Arguably... We're not asking for this Court to grant... There's no indication that he was complaining about not getting an adequate translation in his earphones. Well, I don't think the burden is on him to affirmatively come forward and say, I'm not understanding. Usually, if there is a lack of ability to hear or to get a translation, there's a quizzical look, there's a complaint, there's some fidgeting, and the translator will go over and adjust it. The record doesn't show any of that. In Lopez-Vazquez, I mean, this Court has found unduly coercive where an immigration judge simply asks, if anybody wants to apply for certain relief or wants a lawyer, then stand up and tell me about it and we'll talk about it. And the Ninth Circuit has already, this Court has already held that that is unduly coercive, that stigmatizes somebody who maybe wants to assert their rights. The simple fact of the judge singling somebody out or the silence of their fellows is inherently coercive. He's stretching a little now with a person who just wants to say, I'm not getting it, it's not coming through. This isn't a situation where he's complaining about anything other than his inability to understand the proceedings. Well, if you look at what... And he's now complaining about that, but he didn't at any time, nor did he indicate, did he, in any way that he didn't understand and couldn't understand. We have to look at the context. He did say, excuse me, in response to one question. That appears to be clarified. And then the immigration judge asks him three times in a row, are you a United States, are you a citizen of the United States of America? And his answer is Mexico. Now, it's very important for the immigration judge, it's possible to be a citizen of Mexico and the United States. So he needs the answer, no, I'm not a citizen of the United States. So we ask the question, are you a citizen of the United States? Mr. Delgado answered Mexico. Three times. He asked it again. He asked the last time, he basically tells him yes or no. And he says Mexico again. Now, arguably, that's, on his understanding, that's a responsive answer. But then the immigration judge becomes very angry. We submitted, in addition to the cold transcript, we submitted the audio recording of what the immigration judge actually sounded like. And he told Mr. Delgado Benitez that, apparently, sir, you do not understand what it means to answer my questions yes or no. Have a seat, sir. If I get to your case at the end of the day, we'll do it at the end of today. Otherwise, I will do it around the 10th of October matters trail. So he never even gives Mr. Delgado a chance to come forward and say, the immigration judge never asks, are you having trouble understanding me? Why can't you answer this? He doesn't ask the interpreter, can you check his headset? Is he understanding you? He simply gets angry and makes Mr. Delgado sit down. Now, in the declaration that we filed, Mr. Delgado- He made him sit down, but it didn't make him wait two or three months. His question suggested he might make him wait. Did he? No, he didn't. The matter was recalled the same day. The same day? Yes. And it was concluded that- It was concluded. But the specter, the course of effect of that- Does it weaken your argument, though, when we see that that's the fact? Not at all. I think it strengthens it. If two months had gone by, he might come back. The judge might be in a good mood that day. We all know how judges are people, too. And the moods can change day to day. But when he came back in front of the same immigration judge the same day, after having been told to sit down when trying to give a responsive answer to a question, that specter, that sword is still hanging over his head. Now, in any case, we're not even arguing that these are the facts that the court should accept on appeal. We're not asking for dismissal. The fact is the district judge is in a better position and should have been the one to make the findings of fact, to determine credibility of what's in the declaration, to decide what actually happened behind the scenes at the immigration hearing and whether there was a due process violation. Yeah. If you're asking for a hearing in front of the district judge, what's the district judge going to know from that hearing that we don't know now? Well, he would make- If the district judge can hear from your client, I couldn't hear. So I guess the district judge is going to be able to look him in the eye and decide whether he's telling the truth? Yes. Under the local rules, Southern District of California, Local Rule 47.1, the party alleging facts in support of a motion has to file a declaration. We complied with that. Then the government, if it wants to dispute those facts, the opposing party has to file their own declaration. I'm not saying that they have to go back and file a declaration. I'm not going to have any other facts. I mean, we're entirely dependent upon what he says. So then the government also, if they're opposing those facts, has the right to cross-examine the defendants. So the Court would get eyewitness or would be a witness to the testimony that he provides in court and could make credibility determinations and could decide whether it would weigh the facts alleged against the facts and find facts in the first place. The problem with this order and the reason this is error is because the Court, when issuing the order, simply did not factor in. He didn't make any credibility findings. He didn't find any facts. And under De Cesare, which is a suppression case, the same situation happened. The defendant challenging a search warrant for a violation of the knock-and-announce rule filed declarations. The government opposed with their declarations, and the Court declined to hold a hearing and simply denied the motion. The Court made the same error in this case. The only requirement is that the offer of proof be sufficiently definite, specific, detailed, and non-conjectural to enable the Court to conclude the contested issues of fact going to the validity, in that case, of the search are in question. We had those facts. We had a dispute of fact in this case, and we have an order that makes no findings of fact and simply really abrogated Mr. Delgado's right to present a complete defense and at least have it considered. Let's hear from the government, and you'll have a chance to respond. Good morning, Your Honors. Shereen Becker on behalf of the United States. May it please the Court. The district court's order in this case should be affirmed for four separate and independent reasons, the first of which is that the district court properly denied the petitioner's claim that his due process rights were violated during his deportation hearing due to the faulty headset. The district court in this case considered the defendant's declaration. The district court also considered the audio recording of the deportation proceeding and the transcript derived therefrom. The district court then held not one but two hearings and heard argument from both sides about this issue. Then the district court issued a written decision. Based on all of the evidence before the district court, including the declaration and the audio and the transcript, the district court made a finding that the petitioner was able to understand the questions that were posed to him. Was there a motion made by the defendant to testify in person as opposed to simply filing a declaration? No, Your Honor. At neither hearing, neither the first hearing nor the second hearing. The only evidence submitted by the petitioner was this declaration and the court considered that declaration. And the court, I think, properly afforded more weight to the audio recording and the transcript, but the court made clear in its order that it had considered the defendant's declaration. And I think by virtue of the fact that the district court made this finding that the petitioner could understand, did hear the immigration judge's questions and was able to respond to them, that's the standard that this court has set forth in Perez Last Door. And by virtue of that finding, the district court made a credibility determination. Because if the district court had, in fact, believed that the petitioner was not able to understand the proceedings due to the faulty headset, the district court would have had to have found a due process violation. Let me ask you a different question, not really raised very directly in the blue brief. The I.J. mentions to the defendant voluntary departure, but doesn't explain it. Voluntary departure is actually a mildly complicated proposition. Voluntary departure sounds like I can leave on my own, I got that part. But the consequences of voluntary departure versus the consequences of deportation or removal are very different, and those were not explained. How do we know that he has any idea as to what he's waving when he says, I don't want voluntary departure? Your Honor, respectfully, the immigration judge did explain what voluntary departure was and the consequences. That explanation took place during the group proceeding. And if you look at the transcript... We've had some cases in terms of what has to be done individually. So what did the I.J. say in the group proceeding explaining voluntary departure? In the group proceeding, I'm reading from the record, excerpts of record at 26. Twenty-six? Okay, hang on a second. Okay, I'm with you. In that first full paragraph, it says, the I.J. says, If no relief appears available, you may still be able to seek voluntary departure from the United States. If granted this relief, you still must depart the United States. Instead of an order of removal, you will receive an order of voluntary departure. That order may affect your ability to return legally in the future. So he explains what... Oh, may affect. In what way? Well, he explains what voluntary departure is. Then in the individualized hearing, the second individualized hearing with the petitioner, the immigration judge first asks him and makes sure, were you here, were you present in court when I explained the rights, when I explained the various forms of relief, including voluntary departure? And the petitioner said, yes. So the explanation is what you just read me? Yes. Well... Now, if somebody was my lawyer and trying to explain to me the consequences of voluntary departure versus deportation, and that's what he said, he's fired. I mean, may affect. Okay, that's the first sentence. We need several more sentences to say may affect in what manner. Well, I agree that maybe a more complete explanation... An explanation. But I think the overarching point is that there was an explanation of this form of relief, that being voluntary departure. Then the immigration judge, during the second individualized hearing, asked the petitioner, do you want to apply for this form of relief? That I haven't really explained to you. And the petitioner said no. I understand he said no. Yeah, yeah. But I don't think that the petitioner's decision about electing not to apply for voluntary departure, electing not to have a continued hearing at which he could develop the facts and present those to the immigration judge, petitioner's decision not to apply for that relief is not an error that's attributable to the IJ. In that second individualized hearing, there simply is no evidence in the audio or the transcript that there was any sort of coercion, that there was any difficulty being understood. And, in fact, I think your response that probably is convincing to me is, this argument was not made in the blue brief. I wish it had been. That's true, Your Honor. It wasn't made in the brief. And based on the record that we have here before this court, I think it is clear that the transcript is here. We know exactly what the immigration judge said and what he did explain to the petitioner, and we know the petitioner's responses in the second individualized hearing, and that is that he waived his right to apply for voluntary departure. He elected not to do that, and that he also waived his right to appeal. So I think for the first reason, the district court properly denied his claim of a due process violation based on the faulty headset, and the district court did consider this declaration, considered all of the evidence, went to great lengths to make sure that the petitioner had a fair hearing, and made this credibility determination, which we can infer from the district court's order itself, that the petitioner understood the questions that were being asked of him and was able to provide responses. That's the standard that this court has laid out in Perez-Lastor, that's the standard that is listed in the district court's order, and that in and of itself is a factual finding that this court should review under the clearly erroneous standard. And based on this record, the district court did not err in that regard. The second point and the second reason that this court should affirm the district court's decision is that the district court properly denied the petitioner's claim that he suffered due process violations based on the immigration judge's allegedly coercive comments. And I think it's important in this case to look to this court's precedent, which without a doubt holds that an impatient immigration judge and the tone and the harsh questioning of an immigration judge is not enough to rise to the level of a due process violation. Here, the standard is that the immigration judge's conduct had to have resulted in an incorrect resolution, and here we just simply don't have those facts here. Instead, the result of the hearing would have been exactly the same. Had his headset been functioning perfectly, had the IJ not uttered a single objectionable comment, the petitioner would have answered each of those allegations contained in the notice to appear in the exact same way. He doesn't in his declaration say that he would have changed any answer with regard to the allegations in the notice to appear. So the ultimate issue is that he would have been found removable. And the IJ found that he was eligible for this relief of voluntary departure, notified him that he was eligible of that relief, and the petitioner simply elected not to apply for it. And for that very reason, I think, that leads me to the third reason why the district court's order should be affirmed, and that is there simply is no prejudice here. And on a 1326D motion that is a collateral attack in a criminal proceeding of the underlying deport order, we have to have prejudice. This court held as recently as last week in the context of a right to counsel violation, there still must be prejudice. Petitioner in this case simply can't show prejudice. It is per se prejudicial when an immigration judge fails to advise the alien about relief, but here the immigration judge notified him and said, you are eligible for voluntary departure. But it is a discretionary decision, and when the government opposes a grant of voluntary departure, the immigration judge must give the alien time to develop the record and present facts so that the immigration judge can, in its discretion, act in the alien's favor. So there had to have been some continuance. And in this case, the alien simply elected not to apply for it. So there is no prejudice. The alien doesn't speak English, is told he can apply for something that's not explained, and he says no. Great. I mean, I don't find that a very satisfactory proceeding, whether he can hear or not. Even if he can hear perfectly, it's just fantasy land to think that he knew what he was waiving when he said, I'll waive voluntary departure. Well, I think I agree with Your Honor in the sense that this deportation hearing was not perfect. But when people speak different languages, this circuit has recognized that there are problems. There are often miscommunications. I'm not talking about language. I'm talking about whether he understood what voluntary departure meant, and he doesn't, or at least there's no indication that the IJ explained it in such a way that he could have understood what the consequences were. Now, I think the full answer is that's not been argued in this case. It hasn't. But I also think that when we look at the record and when we talk about what the immigration judge said at the outset, explaining the different types of relief and explaining what voluntary departure is, he did say that an order, a deportation order, versus voluntary departure would affect the alien's ability to return legally in the future. The next sentence is that voluntary departure can be given for different periods of time and under different circumstances. The entire point is that this, at the outset, when the IJ is giving these instructions to the group proceeding, the IJ has to give a general explanation. And then when we get to the specifics and the individualized hearings, then the IJ looks at the facts before the court and says, okay, based on all of these facts, based on your criminal record, based on the allegations in the notice to appear and a number of other facts, you are eligible for voluntary departure. Do you want to apply for it or not? I agree that this court has held that unless the court has further questions, I would submit. Okay. Thank you. One main point that I would like to rebut, the government argues that the district court did consider and simply made a credibility determination as to the declaration that was filed. It's lower level. The government argues that the district court did consider and simply rejected the declaration that was filed. But a close reading of the order shows the district court listed, mentioned Mr. Delgado's, the contents of the declaration simply in a footnote in the record at page 148 in a section entitled contention of the parties. Goes through the applicable standard in general for 1326D motion. And then in the analysis section does a block quote from Perez-Lestor and says review of the audio tape and the transcript in this case shows and begins to discuss the contents of it. Did you move in the district court to have live testimony from your client with respect to his inability to hear? No, we did not, but that's not what. And that's what you're now asking for, right? Well, the way the local rules put it, anybody who wants to allege facts has to file a declaration. It's up to the opposing party to request cross-examination or to counter with their own declarations. So once we're alleging facts, we put them in the declaration. If they're not opposed, the government, the judge doesn't even have to have an evidentiary hearing but has to find the facts. You're now asking for something from us that you never asked from the district judge. Well, we're asking for an evaluation of the declaration, for it to be included in the analysis of whether there was a dual process filing. Well, it seems to me that the district judge did read the declaration. Now, you're suggesting that he didn't even read the notice in front of him? No, no. I'm not saying that at all. He did have it in front of him. He clearly read it, and he knew about the contents of it. But what he did, he applied Paris last order to say, I can only look at the contents of the transcript. That's what the government argued in the district court, and that's what the analysis section of the order actually shows. It says review of the order. What purpose did the footnotes serve? Sorry? What purpose did the footnotes serve? He's just setting out for procedural reasons the contentions of the parties. We're arguing this. The government's arguing that. Then he goes on and says review of the audio tape and transcript. Setting it out, he's considering. Describes that. And then the district court, most tellingly, at the end of his order, he says there is no indication that the headset was not working properly. There is no evidence of a dual process violation in this case. He doesn't say there's evidence, but I'm giving it low weight, or I'm discounting it, or I'm making an adverse credibility finding. He just says there's no evidence. And clearly, he's only talking about what he's talked about in the entire analysis section, which is the contents, the transcript of the actual proceedings. Okay. Thank you. The case of the United States v. Delgado Benitez now is submitted for decision.
judges: Hellerstein, Farris, Fletcher